[Cite as *Phelps v. Ohio Dept. of Rehab. & Corr.*, 2016-Ohio-5155.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Olisseo J. Phelps,                                        :

      Plaintiff-Appellant,                              :

v.                                                                 :           No. 16AP-70
                                                   (Ct. of Cl. No. 2013-00587)
Ohio Department of Rehabilitation and              :
Correction,
                                              (REGULAR CALENDAR)
                                              :

      Defendant-Appellee.                             :

                                              :

D E C I S I O N

Rendered on July 28, 2016

**On brief:** *Swope and Swope,* and *Richard F. Swope,* for appellant. **Argued:** *Richard F. Swope.*

**On brief:** *Michael DeWine,* Attorney General, and *Timothy M. Miller,* for appellee. **Argued:** *Timothy M. Miller.*

APPEAL from the Court of Claims of Ohio

TYACK, J.

{¶ 1} Plaintiff-appellant, Olisseo J. Phelps, appeals the judgment entry of the Court of Claims of Ohio which adopted its magistrate's decision and overruled Phelps' objections to the decision. Phelps was attempting to bring several claims of negligence against defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"). For the following reasons, we affirm the Court of Claims' decision.

{¶ 2} Phelps assigned eight errors for our consideration:

[I.] The trial court and magistrate erred in ruling defendant-appellee was not guilty of negligence in failing to assist, or take proper precautions to protect, an obviously weakened inmate from falling against a radiator which was without a

protective shield and an exposed stem caused by a missing control knob.

[II.] The trial court and magistrate erred in ruling defendant-appellee was not negligent in failing to provide adequate safe cover for the radiator and for allowing an exposed shaft of a control device caused by a missing knob.

[III.] The trial court and magistrate erred in finding there was no evidence showing the valve stem was unusually sharp.

[IV.] The trial court and magistrate erred in ruling the cause of the accident was not the undue heat of the radiator or the condition of the radiator, but because plaintiff-appellant fainted.

[V.] The trial court and magistrate erred in applying the open and obvious doctrine to the facts since the ability to observe the condition of the radiator was not caused by lack of observation, but by plaintiff-appellant's physical condition.

[VI.] The trial court and magistrate erred in ruling there was not actual or constructive notice of the danger created by the condition of the radiator.

[VII.] The decisions of the trial court and magistrate are against the manifest weight of the evidence and contrary to law; and

[VIII.] The trial court erred in ruling a recording system, that failed to record the entire proceeding, did not deny appellant of a fair de novo review, a fair appeal, and due process of law guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 16, of the Ohio Constitution.

## Facts and Case History

{¶ 3} Phelps is an inmate who, at all times, was in the custody and control of ODRC, and incarcerated at the Chillicothe Correctional Institution ("CCI"). On January 8, 2013, Phelps alerted corrections officers that he was experiencing stomach pain and weakness and he was moved to CCI's infirmary. Phelps received intravenous

therapy and used the bathroom several times that day under his own power. The nurse practitioner said Phelps would need to return the next day for a urine and blood sample.

{¶ 4} On January 9, 2013, Phelps was placed in restraints and taken to the infirmary. He walked there under his own power but had to stop and rest a moment along the way. Phelps had his blood drawn and around that time he had a spell of lightheadedness where he leaned against a wall and slid to the ground. Phelps was helped up and taken to see the triage nurse who admitted him to a segregation patient room. A few minutes after Phelps entered the segregation patient room, he got up and went to the attached bathroom to produce a urine sample. It was protocol to have segregation inmates in the patient room by themselves with leg irons.

{¶ 5} While in the bathroom, Phelps felt faint and started to fall down. Phelps' legs got twisted up in the leg irons and he fell in such a way that his right arm swung down violently onto the valve stem of the radiator, cutting into and burning his skin. Phelps then exited the bathroom and pressed the emergency call button at which point staff entered the patient room and rendered assistance. Soon thereafter, Phelps was transported to The Ohio State University Medical Center where he was diagnosed and treated for an ulcer that had caused internal bleeding and low blood pressure. Phelps' wound on his right arm was treated but left a scar.

{¶ 6} On October 3, 2013, Phelps filed a lawsuit against ODRC in the Court of Claims, alleging that the injury to his arm was a result of negligence. A magistrate was appointed to the case and a trial was held to determine liability only on April 21, 2015.

{¶ 7} On August 12, 2015, the magistrate's decision found that the evidence did not weigh in Phelps' favor as to the ordinary negligence claim based on the failure to assist him or otherwise prevent him from falling. The magistrate also found that the condition of the radiator was not unreasonably dangerous. Further, the magistrate found Phelps' other allegations of failing to assist or prevent him from falling in his condition, and negligence in delaying medical treatment for his injuries, sound in medical malpractice. Therefore such claims require expert testimony to establish the standard of care and a breach of that standard. Phelps filed objections to the magistrate's decision.

{¶ 8} On December 29, 2015, the Court of Claims overruled Phelps' objections and adopted the magistrate's decision including the findings of fact and conclusions of law. On January 27, 2016, Phelps filed a timely notice of appeal.

### Standard of Review

{¶ 9} Pursuant to Civ.R. 53, the trial court reviews a magistrate's decision de novo. *Mayle v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-541, 2010-Ohio-2774, ¶ 15, citing *State Farm Mut. Auto. Ins. Co. v. Fox*, 182 Ohio App.3d 17, 2009-Ohio-1965, ¶ 10 (2d Dist.). In ruling on objections to a magistrate's decision, the trial court must undertake an independent review of the matters objected to in order "to ascertain [whether] the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

{¶ 10} A trial court's adoption of a magistrate's decision is reviewed under an abuse of discretion standard of review. *Marchel v. Marchel*, 160 Ohio App.3d 240, 2005-Ohio-1499, ¶ 7 (8th Dist.). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Claims of error by the trial court must be based on the trial court's actions, rather than on the magistrate's findings. *Watson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-606, 2012-Ohio-1017, ¶ 6, citing *Mayle* at ¶ 15. Thus, we may reverse the trial court's adoption of the magistrate's decision only if the trial court acted unreasonably, arbitrarily or unconscionably. *Id.*, citing *Fox* at ¶ 11.

### Assignments of Error

{¶ 11} Phelps' claim is based on a theory of ordinary negligence. It is well-settled that in order to establish a cause of action for negligence, the plaintiff must show by a preponderance of the evidence that "(1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom." *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 8. "The existence of a duty depends on the foreseeability of the injury, and the test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *McGuire v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 96API04-444 (Sept. 30, 1996), citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984).

{¶ 12} In the context of prison cases, this court has held that prison officials owe a duty of reasonable care and protection from unreasonable risks to inmates, but they are not the insurers of inmates' safety. *McGuire*, citing *Williams v. S. Ohio Corr. Facility*, 67 Ohio App.3d 517, 526 (10th Dist.1990), citing *Clemets v. Heston*, 20 Ohio App.3d 132, 136 (6th Dist.1985). Reasonable care is defined as the degree of caution and foresight that an ordinarily prudent person would employ in similar circumstances. *Woods v. Ohio Dept. of Rehab. & Corr.,* 130 Ohio App.3d 742, 745 (10th Dist.1998).

{¶ 13} In order to constitute a breach, the plaintiff must show that the actions giving rise to the injuries were foreseeable by prison officials. *McGuire*. Further, inmates are required to use reasonable care to ensure their own safety. *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-787, 2013-Ohio-5106, ¶ 8. "Under the 'open and obvious' doctrine, an owner or occupier of property owes no duty to warn invitees entering the property of open and obvious dangers on the property. The rationale behind the doctrine is that the open and obvious nature of the hazard itself serves as a warning, and that the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." (Citations omitted.) *Anderson v. Ruoff*, 100 Ohio App.3d 601, 604 (10th Dist.1995). The open and obvious doctrine, where warranted, may be applied in actions against ODRC with the result that ODRC would owe no duty to an injured inmate. *Williams v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-1193, 2005-Ohio-2669, ¶ 8.

{¶ 14} Phelps' assignments of error mirror his objections to the magistrate's decision. The first assignment of error argues the trial court erred in ruling ODRC was not guilty of negligence in failing to assist, or take proper precautions to protect, an obviously weakened Phelps from falling against a radiator which was without a protective shield and an exposed stem caused by a missing control knob.

{¶ 15} The Court of Claims found that Phelps had no prior documented history of internal bleeding or ulcers, the ultimate cause of his weakness and fainting spell. The day before the accident, Phelps was able to get up and use the bathroom on several occasions without assistance. Phelps was able to walk under his own power to the infirmary. Phelps did not voice any concerns and did not request assistance when he was asked to provide a

urine sample in the segregation patient room. Further, the segregation patient room was equipped with a call button that Phelps could have utilized if he needed assistance.

{¶ 16} The Court of Claims concluded that, based on these facts, it was not foreseeable by the prison staff that Phelps would faint in the bathroom, a reasonably prudent person would not have anticipated that Phelps would injure himself from fainting in the bathroom. We find that the trial court did not abuse its discretion in coming to this conclusion.

{¶ 17} The first assignment of error is overruled.

{¶ 18} The Court of Claims addressed Phelps' second, third, fourth, fifth, and sixth objections together. These objections mirror Phelps' assignments of error and we will address them together. Phelps argues essentially that the radiator was unreasonably dangerous: ODRC was negligent in failing to provide an adequate safe cover of the radiator and allowing an exposed shaft of a control device caused by a missing knob; there was evidence that the valve stem was unusually sharp; the cause of the accident was the undue heat of the radiator or the condition of the radiator, not that Phelps fainted; the trial court erred in applying the open and obvious doctrine; and there was no actual or constructive notice of the danger created by the condition of the radiator.

{¶ 19} The Court of Claims found that Phelps does not explain how a radiator located on one side of the bathroom, which was easily avoidable, would endanger Phelps. The magistrate noted there was no evidence presented that anyone had ever been injured before by the radiator. The valve stem was made of standard piping materials and was not shown to be unusually sharp. Phelps did not show that the surface temperature of the valve stem was unusually high or any greater than the rest of the radiator. Phelps argues that a handle for opening and closing the valve should have been affixed to the valve stem, as opposed to a safety shield or guard. Further, the Court of Claims stated the fact that a radiator emits heat and the capacity of a radiator to burn those who touch it, was open and obvious to Phelps and all inmates who used the bathroom in the segregation patient room. The Court of Claims found that ODRC owed Phelps no duty under these circumstances. We find that the Court of Claims did not abuse its discretion in coming to this conclusion.

{¶ 20} The second, third, and fourth assignments of error are overruled.

{¶ 21} The Court of Claims found that the question of whether Phelps had notice about the radiator's condition was irrelevant because the radiator's condition was not unreasonably dangerous. We find that it was not an abuse of discretion for the Court of Claims to determine that the radiator was not unreasonably dangerous. Nor was it an abuse of discretion to determine that a radiator emits heat and can burn as an open and obvious danger.

{¶ 22} The fifth and sixth assignments of error are overruled.

{¶ 23} The seventh assignment of error argues that the Court of Claims' decision is against the manifest weight of the evidence.

{¶ 24} Decisions supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *Melvin v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 10AP-975, 2011-Ohio-3317, ¶ 34; *see C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978). A trial court's findings of fact are presumed correct, and "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to decide." *Eagle Land Title Agency v. Affiliated Mtge. Co.,* 10th Dist. No. 95APG12-1617 (June 27, 1996), citing *State v. Thomas*, 70 Ohio St.2d 79 (1982). This presumption arises because the trial judge "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 25} As already noted, the evidence in this case indicates that Phelps did not have a history of fainting and he did not indicate that he required assistance before he fell. Further, the radiator was not unreasonably dangerous. We find that the decision of the Court of Claims is supported by some competent, credible evidence going to all the essential elements of the case.

{¶ 26} The seventh assignment of error is overruled.

{¶ 27} The eighth assignment of error argues that the Court of Claims erred in ruling a recording system that failed to record the entire proceeding did not deny Phelps a fair de novo review, a fair appeal, and due process of law, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16, of the Ohio Constitution.

{¶ 28} Civ.R. 53(D)(3)(b)(iii) states:

> An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available.

If an objecting party fails to submit a transcript or affidavit, the trial court must accept the magistrate's factual findings and limit its review to the magistrate's legal conclusions. *Triplett v. Warren Corr. Inst.,* 10th Dist. No. 12AP-728, 2013-Ohio-2743, ¶ 13. Other options are available to an appellant when a verbatim transcript is unavailable; an appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. *See* App.R. 9(C)(1); *see also Knapp v. Edwards Labs.*, 61 Ohio St.2d 197, 199-200 (1980).

{¶ 29} Phelps failed to file an affidavit or any statement with the missing evidence or a recollection of the proceedings. It is upon Phelps to provide the transcript or an affidavit. The missing portion of the transcript does not deny Phelps a fair de novo review by the Court of Claims, or a fair appeal to this court, nor violate due process.

{¶ 30} The eighth assignment of error is overruled.

{¶ 31} Having overruled Phelps eight assignments of error, we affirm the decision of the Court of Claims of Ohio.

*Judgment affirmed.*

SADLER and LUPER SCHUSTER, JJ., concur.

————————————